UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **ANYTHING WITH INK WEST AZ LLC,** } | |
| } | |
|     **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 5:21-cv-00448-MHH** |
| } | |
| **PROSOURCE TECHNOLOGY INC.,** } | |
| } | |
|     **Defendant.** } | |

## MEMORANDUM OPINION AND ORDER

Anything with Ink West AZ LLC has moved for default judgment against ProSource Technology, Inc. (Doc. 11).[1] Anything with Ink sued ProSource Technology on March 29, 2021, seeking damages for ProSource Technology's alleged breach of a contract to sell gloves to Anything with Ink. (Doc. 1, pp. 3-4, ¶¶ 10-18). The summons notifying ProSource Technology of the action against it was returned to the Court executed on May 14, 2021. (Docs. 6, 7). ProSource Technology has not appeared to defend itself.

---

[1] Anything with Ink does business as Cardinal Sourcing Company, and many of the documents before the Court refer to the plaintiff as Cardinal Sourcing Company. For purposes of clarity, the Court refers to the plaintiff as Anything with Ink throughout this opinion.

On June 21, 2021, Anything with Ink moved for entry of default against ProSource Technology. (Doc. 9). The Clerk made an entry of default against ProSource Technology on June 22, 2021. (Doc. 10). Anything with Ink has filed copies of its purchase order, (Doc. 11, p. 11); a bank statement showing a transfer in the amount of the purchase price, (Doc. 11, p. 13); a letter demonstrating that Anything with Ink took out a loan to finance this purchase, (Doc. 11, p. 15); a purchase order from a third-party buyer to purchase most of the gloves from Anything with Ink, (Doc. 11, pp. 17-18); a bank statement showing a transfer to the glove manufacturer to cover shipping costs, (Doc. 11, p. 20); and an affidavit from Sean Simmons, owner of Anything with Ink, (Doc. 11, pp. 7-9). For the reasons discussed below, the Court grants Anything with Ink's motion.

**STANDARD FOR DEFAULT JUDGMENT**

Federal Rule of Civil Procedure 55 establishes a two-step procedure for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, as in this case, the Clerk of Court may enter a clerk's default. FED. R. CIV. P. 55(a). Second, after entry of the clerk's default, if the defendant is not an infant or incompetent person, a district court may enter a default judgment against the defendant because of the defendant's failure to appear or defend. FED. R. CIV. P. 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).

"A motion for default judgment is not granted as a matter of right." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004) (internal footnote omitted). After a clerk enters default under Rule 55(a), a district court must review the sufficiency of the complaint and its underlying substantive merits to determine whether a moving party is entitled to default judgment. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). A court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and that a sufficient basis exists in the pleadings for the relief sought. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). In addition to the pleadings, a district court may consider evidence presented in the form of an affidavit or declaration. *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011). A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal quotation marks omitted)).

**FACTUAL ALLEGATIONS**

Anything with Ink alleges that it delivered an "Irrevocable Confirmed Purchase Order" for 26,130 boxes of "Nitrile Blue Gloves Examination Medium" and 66,130 "Nitrile Blue Gloves Examination X-Large," priced at $9.25 per box. (Doc. 11, p. 11; Doc. 1, p. 3, ¶¶ 10, 11). The Irrevocable Confirmed Purchase Order

is signed by Sean Simmons, owner of Anything with Ink, and Sean Heileman, CEO of ProSource Technology. (Doc. 11, p. 11). Anything with Ink "paid the full amount of $853,404.50 to ProSource [Technology] on June 9, 2020." (Doc. 1, p. 3, ¶ 12; Doc. 11, p. 13). ProSource Technology delivered only 20,000 boxes of gloves. (Doc. 1, p. 4, ¶ 15). ProSource Technology has not refunded Anything with Ink's payment for the boxes ProSource Technology did not deliver. (Doc. 1, p. 4, ¶ 17). As a result, Anything with Ink was not able to fulfill its obligations under a contract with a third-party buyer to supply 80,000 boxes of gloves. (Doc. 1, p. 4, ¶ 19; Doc. 11, pp. 17-18).

## DISCUSSION

### a) Subject Matter Jurisdiction

Before a district court may enter a default judgment, the court first must confirm that it has subject matter jurisdiction. *Smarter Every Day, LLC v. Nunez*, No. 15-1358, 2017 WL 1247500, at *2 (N.D. Ala. Apr. 5, 2017) (citing *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001)). Anything with Ink contends that the Court has diversity jurisdiction to hear this case under 28 U.S.C. § 1332. (Doc. 1, p. 2, ¶ 6). A district court may exercise subject matter jurisdiction under 28 U.S.C. § 1332 if the parties are completely diverse, and more than $75,000 is in controversy. 28 U.S.C. § 1332(a). In its complaint, Anything with Ink alleges that ProSource Technology failed to refund $668,405.00,

(Doc. 1, p. 2, ¶ 6), and Anything with Ink claims damages for lost profits, interest on a loan Anything with Ink took out to finance the purchase, and prepaid shipping costs, (Doc. 1, p. 4, ¶ 19). Based on these factual allegations, the Court is satisfied that more than $75,000 is in controversy.

As to the requirement of complete diversity among the parties, Anything with Ink alleges that ProSource Technology is a corporation formed under the laws of the State of Alabama, with its principal place of business in Madison, Alabama. (Doc. 1, p. 2, ¶ 3). Anything with Ink alleges that it is a limited liability company and its two members – Sean Simmons and Joshua Zimber – are domiciled in Arizona. (Doc. 1, pp. 1-2, ¶ 2). The Court is satisfied that the parties are completely diverse, and the Court has subject matter jurisdiction over this case.

### b) Personal Jurisdiction

The Court also must determine whether it has personal jurisdiction over ProSource Technology. *Oldfield v. Pueblo Da Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). Under Rule 4 of the Federal Rules of Civil Procedure, "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." FED. R. CIV. P. 4(k)(1)(A). Anything with Ink alleges that ProSource Technology is a corporation organized under the laws of the State of Alabama and that ProSource Technology's

principal place of business is in Madison, Alabama. (Doc. 1, p. 2, ¶ 3). Anything with Ink served ProSource Technology with process on May 13, 2021. (Doc. 7, p. 1). Accordingly, the Court has personal jurisdiction over ProSource Technology.

### c) Liability for Breach of Contract

Anything with Ink brings one claim for breach of contract against ProSource Technology. (Doc. 1, p. 5, ¶¶ 20-25). According to Anything with Ink, ProSource Technology breached its obligation to deliver 92,260 boxes of gloves. Anything with Ink attached to its motion for entry of default judgment copies of the Irrevocable Confirmed Purchase Order, (Doc. 11, p. 11), and proof of payment for the boxes of gloves, (Doc. 11, p. 13). In a diversity case, a district court must "apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992). "Alabama applies the traditional doctrine[] of *lex loci contractus* to contract claims . . . . Th[is] doctrine states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (internal quotation marks omitted). Anything with Ink sent the Irrevocable Confirmed Purchase Order to Huntsville, Alabama to an Alabama corporation. (Doc. 11, p. 11). The Irrevocable Confirmed Purchase Order states:

"**GOVERNING LAW VENUE:** Alabama." (Doc. 11, p. 11) (emphasis in Doc. 11). For those reasons, the Court will apply Alabama law.

Under Alabama law, a breach of contract claim requires the plaintiff to plausibly demonstrate "[1] the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Poole v. Prince*, 61 So. 3d 258, 273 (Ala. 2010) (internal citations and quotation marks omitted). Anything with Ink argues that the copy of the Irrevocable Confirmed Purchase Order demonstrates the existence of a valid contract between it and ProSource Technology. (Doc. 1, p. 3, ¶ 10; Doc. 11, p. 11).[2] The Irrevocable Confirmed Purchase Order states:

> The given document provides the legal basis for the Seller's transfer of these terms and parameters for preparing of the draft contract and shall become an integral part of the future contract and valid for up to 30 days.

(Doc. 11, p. 11). The document states Anything with Ink is "ready to purchase the following goods," and the document includes a description of the goods, the unit price of the goods, the quantity of the goods, and the total cost of the goods. (Doc. 11, p. 11). The document is signed by Anything with Ink's owner and ProSource

---

[2] In its complaint, Anything with Ink alleges that "ProSource [Technology] entered [into] a contract with [Anything with Ink] on May 31, 2020." (Doc. 1, p. 3, ¶ 10). In its motion for entry of default judgment, Anything with Ink included the Irrevocable Confirmed Purchase Order, dated May 31, 2020. (Doc. 11, p. 11). That is the only document Anything with Ink submitted to the Court with a May 31, 2020 date. Therefore, the Court concludes that Anything with Ink relies on the Irrevocable Confirmed Purchase Order as evidence that there was a valid contract binding both parties.

Technology's CEO. (Doc. 11, pp. 11). Anything with Ink does not allege that a draft contract – formalizing the terms of the Irrevocable Confirmed Purchase Order – was created.

The Court is not aware of Alabama case law – or case law from any state – that indicates whether an Irrevocable Confirmed Purchase Order constitutes a binding contract, but the Court need not decide whether the Irrevocable Confirmed Purchase Order is a binding contract. Alabama Code Section 7-2-206, titled "Offer and acceptance in formation of contract," states:

> (1) Unless otherwise unambiguously indicated by the language or circumstances:
>
> . . .
>
> (b) An order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods, but such shipment of nonconforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer.

ALA. CODE § 7-2-206(1)(b). Here, the buyer, Anything with Ink, placed an order for 92,260 boxes of gloves – in the form of the Irrevocable Confirmed Purchase Order – to ProSource Technology. (Doc. 11, p. 11). Then, according to Anything with Ink, ProSource Technology shipped nonconforming goods – 20,000 boxes of gloves – to Anything with Ink. (Doc. 1, p. 4, ¶ 15). There is no evidence before the Court that ProSource Technology seasonably notified Anything with Ink that the shipment

it sent only was an accommodation to Anything with Ink. Thus, Anything with Ink plausibly demonstrates the existence of a contract between it and ProSource Technology.

The alleged agreement between the parties obligates Anything with Ink to pay ProSource Technology $853,404.50. (Doc. 11, p. 11). On June 9, 2020, Anything with Ink initiated a wire transfer for this amount. (Doc. 11, p. 13). Anything with Ink alleges that this money was transferred to ProSource Technology. (Doc. 1, p. 3, ¶ 12). Thus, Anything with Ink plausibly demonstrates that it performed under the contract.

Anything with Ink also has plausibly demonstrated that ProSource Technology failed to perform when it did not deliver all the gloves Anything with Ink ordered. (Doc. 1, p. 5, ¶ 23). And ProSource Technology's non-performance damaged Anything with Ink. (Doc. 1, p. 4, ¶ 19). Accordingly, Anything with Ink is entitled to default judgment on its breach of contract claim.

### d) Damages

When assessing damages, a district court must "assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). An evidentiary hearing may be required to determine the amount of damages, but if the record is sufficient, a district court may determine damages without a hearing. *See Sec. & Exch. Comm'n v. Smyth*, 420 F.3d

1225, 1232 n.13 (11th Cir. 2005).  Although a defaulted defendant admits well-pleaded allegations of liability, "allegations relating to the amount of damages are not admitted by virtue of default."  *PNCEF, LLC v. Hendricks Bldg. Supply, LLC*, 740 F. Supp. 2d 1287, 1292 (S.D. Ala. 2010).

Anything with Ink argues that the "amount sought is a sum certain" and asks the Court to enter judgment pursuant to Federal Rule of Civil Procedure 55(b)(1). (Doc. 11, p. 2).  To support a $1,793,603.50 damages request, (Doc. 11, p. 9), Sean Simmons, Anything with Ink's owner, states in an affidavit that ProSource Technology is liable for "direct damages of $668,405.50," (Doc. 11, p. 8); "$54,798.50 in interest for [Anything with Ink's] financing of the product," (Doc. 11, p. 8); "$892,400.00 in lost profits," (Doc. 11, p. 8); and "$178,00[0].00 in pre-paid shipping costs," (Doc. 11, p. 8).[3]  Attached to Mr. Simmons's affidavit are various supporting documents.

The Court has some questions about Anything with Ink's alleged damages. To ascertain the correct damages amount, the Court sets this matter for a hearing pursuant to Federal Rule of Civil Procedure 55(b)(2).

**CONCLUSION**

For the foregoing reasons, the Court grants Anything with Ink's motion for default judgment against ProSource Technology.  (Doc. 11).  The Court will enter a

---

[3] The four figures listed above add up to $1,793,604.00, not $1,793,603.50.

judgment after conducting a hearing concerning damages. The Court sets this matter for a telephone conference at 11:00 a.m. CST on March 9, 2022. Counsel shall please dial 877-873-8018 and enter access code 5313999 to participate in the call.

The Court asks the Clerk of Court to please term Doc. 11.

**DONE** and **ORDERED** this March 2, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE